UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WORLDWIDE UNDERWRITERS, LTD, et al.,

    Plaintiffs,                                       Civil Action No. 19-CV-10985

vs.                                                 HON. BERNARD A. FRIEDMAN

LIBERTY MUTUAL INSURANCE CO., et al.,

    Defendants.

_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter is presently before the Court on defendants' motion for summary judgment [docket entry 20]. Plaintiffs have responded and defendants have replied. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide this motion without a hearing.

This is a breach of contract and age discrimination case. Plaintiff Worldwide Underwriters, LTD ("Worldwide") is a corporation based and incorporated in Michigan. Plaintiff Joseph Mullins is a resident of Michigan and the owner of Worldwide. Defendants are two insurance providers and underwriters, Liberty Mutual Insurance Company ("Liberty Mutual") and its subsidiary, Safeco Insurance ("Safeco"). The former is incorporated and headquartered in Massachusetts, and the latter is incorporated in Massachusetts and headquartered in Washington.

In their second amended complaint ("SAC"), plaintiffs state that plaintiff Worldwide is in the business of "soliciting customers and binding those customers under insurance policies sold by . . . insurance providers." SAC ¶ 11. Plaintiffs allege that

> Defendants and Plaintiff Worldwide entered into an agency contract on August 30, 2013 . . . . According to the contract, Plaintiff Worldwide would receive compensation in the form of commission based upon the sale and renewal of Defendants' insurance policies to

> customers. The contract further provides that upon the termination of the contract, Plaintiff Worldwide, the agency, "shall retain exclusive ownership of the renewal rights to expiring policies it has placed with [Defendants] . . . unless . . .", with exceptions listed thereafter. Among the exceptions to Plaintiff's retaining ownership of renewal rights after termination of the contract[] is . . . "a material breach of [the contract], … [including] gross and willful misconduct on the part of either party."

*Id.* ¶¶ 12-15 (citations omitted, quoting Pls.' Ex. A (Agency Agreement)). Plaintiffs further allege that defendants terminated Worldwide's contract on December 18, 2018, in a letter stating that Worldwide had engaged in "gross and willful misconduct." *Id*. ¶¶ 16-17. However, plaintiffs state that Worldwide "did not commit 'gross and willful misconduct' at any time," and that defendants' claim "was a pretext for Defendants' desire to end the contract for other reasons." *Id*. ¶¶ 18-19. Plaintiffs further allege that "Defendants [have] frequently . . . terminated the agency contracts of relatively older persons such as Plaintiff Mullins," who was 60 years old when defendants terminated their contract with plaintiffs. *Id*. ¶¶ 20, 22.

Plaintiffs' complaint contains two claims: breach of contract (Count I) and age discrimination in violation of the Elliott-Larsen Civil Rights Act ("ELCRA") (Count II). For relief, plaintiffs seek compensatory and exemplary damages and an order returning plaintiffs to the position they were in prior to defendants' alleged breach.

Defendants seek summary judgment on both of plaintiffs' claims. In deciding a motion for summary judgment, the Court

> must view the evidence in the light most favorable to the party opposing the motion for summary judgment. *Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 660 (6th Cir. 2020). "This includes drawing 'all justifiable inferences' in the nonmoving party's favor." *George*, 966 F.3d at 458 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986)). "[T]he judge's function is not himself to weigh the evidence

and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Jackson-VHS*, 814 F.3d at 775 (quoting *Anderson*, 477 U.S. at 249, 106 S. Ct. 2505).

*Strickland v. City of Detroit*, 995 F.3d 495, 503 (6th Cir. 2021).

In the instant motion, defendants contend that plaintiffs' claims fail because defendants terminated the parties' contract for legitimate reasons and because Mullins did not qualify as defendants' "employee" as required by the ELCRA.[1] As to the breach of contract claim, defendants contend that pursuant to the parties' agency agreement, Worldwide sold three personal automobile insurance policies underwritten by Safeco that misidentified the insured's address on each policy. *See* Defs.' Summ. J. Br. at 3-4. Rather than providing the insured's actual address, each of which was in Detroit, Michigan, defendants state that Mullins admits to inserting Worldwide's address in Redford, Michigan (which is adjacent to Detroit), in order to lower the premium for each policy. *See id*. at 4 (citing Defs.' Ex. D (Letter from Mullins to the Mich. Dep't of Ins. & Fin. Servs.)). Defendants further state that, as described in the December 18, 2018, termination letter, these address discrepancies constituted "gross and willful misconduct" on the part

---

[1] The ELCRA provides in relevant part that an employer shall not:

> (a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to *employment*, compensation, or a term, condition, or privilege of *employment*, because of religion, race, color, national origin, age, sex, height, weight, or marital status.
>
> (b) Limit, segregate, or classify an *employee* or applicant for *employment* in a way that deprives or tends to deprive the *employee* or applicant of an *employment* opportunity, or otherwise adversely affects the status of an *employee* or applicant because of religion, race, color, national origin, age, sex, height, weight, or marital status.

MICH. COMP. LAWS § 37.2202(1)(a)-(b) (emphasis added).

of plaintiffs and justified terminating the agency relationship. *See id*. at 5-6 (quoting Pls.' Ex. B (Termination Letter)).

As to plaintiffs' age discrimination claim under the ELCRA, defendants argue that Mullins was not an "employee" within the definition of the statute, but rather held the role of "an independent contractor, and therefore, he is not permitted to bring a claim under the ELCRA." *Id*. at 1. Defendants add that the parties' agency agreement made this relationship explicit, as it states that "the Agency is an independent contractor with exclusive control over its time, the selection of companies it represents, and the hiring, supervising, and paying of its employees." *Id*. at 2 (quoting Defs.' Ex. A (Agency Agreement) at 2). Defendants further argue that regardless of the parties' relationship, the circumstances under which the agency agreement was terminated (i.e., the address discrepancies) do not give rise "to an inference of discrimination" and, therefore, plaintiffs cannot establish a prima facie case under the ELCRA. *Id*. at 1.

In response, plaintiff Mullins acknowledges that he placed Worldwide's address in Redford on the three Detroit-based insurance applications. *See* Pls.' Resp. Br. at 7-8. However, plaintiffs state that Mullins "did not conceal or misrepresent the customers' residential addresses to Defendants at any time," but rather "allowed the customers, in addition to providing their actual addresses, to put as their 'garaging' address . . . his own agency's Redford address and zip code." *Id*. at 7-8. Plaintiffs argue that Mullins included the Redford address on the customers' applications to avoid violating the Michigan Insurance Code, which requires that "[r]ates shall not be excessive . . . or unfairly discriminatory," MICH. COMP. LAWS § 500.2109(1)(a) – a statute that, plaintiffs

contend, was adopted in order to avoid "the insurance industry practice known as 'redlining.'"[2] Pls.' Resp. Br. at 6. When Mullins initially applied "Defendants' rating criteria in their software programs to calculate the proposed rates for the three African-American customers, the results were premiums of $49,287.80 for six months . . . , $54,864 for six months . . . , and . . . $76,142.80 [for six months]." *Id*. at 7. Mullins viewed these premiums as "impossible rates for the customers to comply with," in violation of Michigan law.[3] *Id*. Once Mullins added the Redford "garaging" address to the customers' insurance applications, the rates lowered to $2,162.90, $4,125.70, and $2,768.50 for six months, respectively. *See id*. at 7-8. Plaintiffs further argue that

> Defendants deemed [Mullins'] conduct in trying to avoid redlining as "gross and willful misconduct," but a jury could see it differently. In 2021 our society is more and more opening its eyes to systemic discrimination and oppression of persons of color. [Mullins] should not have been or now be blamed for trying to help the situation in 2018.

*Id*. at 11.

As to their claim of age discrimination under the ELCRA, plaintiffs contend that defendants exercised significant control over plaintiffs' operations, requiring Worldwide to "operate from 9 a.m. to 5 p.m. and be open for lunch," and that defendants' agent, Dick Newton, "regularly came to Plaintiff[s'] offices and supervised Plaintiff[s'] policies and paperwork, standing by [Mullins'] desk and thumbing through Plaintiff[s'] documents." *Id*. at 12. Plaintiffs argue that they

---

[2] Redlining is an "insurance underwriting practice[ ] . . . in which the insurer charges higher rates or declines to write insurance for people who live in particular areas." *Nationwide Mut. Ins. Co. v. Cisneros*, 52 F.3d 1351, 1354 (6th Cir. 1995).

[3] In their reply brief, defendants state that these premiums "were never found to be [redlining] as such by the Michigan Department of Insurance and Financial Services likely because the auto rates and factors that were used to generate these quoted premiums were approved for use by DIFS in the first place." Defs.' Reply Br. at 1 n.2.

5

therefore qualify as an "employee" under the ELCRA. Plaintiffs add that they observed "instances of age-bias in Newton, favoring younger people. Newton commented on [Mullins'] poor health frequently, noting several times that [Mullins] 'better hurry' and sell more policies 'before you kick over,' and also frequently attending company gatherings and purposely and mainly hanging out with younger agents and not [Mullins]." *Id*. Plaintiffs contend that "an inference may be made that Newton influenced Defendants' decisionmaking in ending [Plaintiffs'] contract with Defendants" and that defendants' motion for summary judgment as to this claim should be denied.

Viewing the evidence in the light most favorable to plaintiffs, the Court concludes that this case does not present any genuine issues for trial. Plaintiffs admit to including Worldwide's address as the garaging address on three customers' insurance applications, but they present no evidence that these customers actually parked or "garaged" their vehicles at that address. Although defendants' rating criteria may indeed calculate exorbitant insurance rates for applicants who reside in Detroit, knowingly providing an inaccurate garaging address on customers' insurance applications was a fraudulent and material misrepresentation. *See Nelson v. Owusu*, No. 347963, 2020 WL 7635280, at *4-5 (Mich. Ct. App. Dec. 22, 2020).[4] *See also Losinkski v. Carter*, No. 355047, 2021

---

[4] In *Nelson*, the Michigan Court of Appeals explained that

> [a] representation is material if the insurer would not have issued the policy, in the manner or at the rate at which it was issued, if the insurer had known of the misrepresentation or nondisclosed fact. An insurer's statement that it would not have issued the policy had it known of the undisclosed information is sufficient to establish that the misrepresentation was material.

2020 WL 7635280, at *4 (citation omitted). In the instant case, plaintiffs acknowledge that the insurer would not have issued the policy at the rate at which it was issued, if the insurer had known of the garaging address misrepresentation. *See* Pls.' Resp. Br. at 7-8.

6

WL 3239468, at *1, 4 (Mich. Ct. App. July 29, 2021) (describing plaintiff's garaging address discrepancy as an act of fraud if done with the intention that the insurer would rely on it). This plainly constituted gross and willful misconduct. Defendants were therefore within their rights to terminate their contract with plaintiffs, and defendants are entitled to summary judgment on Count I for this reason. *See Khalifeh v. Farm Bureau Life. Ins. Co. of Mich.*, No. 271598, 2007 WL 3015244, at *3 (Mich. Ct. App. Oct. 16, 2007) (affirming the trial court's grant of summary judgment in favor of defendant regarding the termination of an insurance agent after the agent was found to have "systematically submitted applications for automobile policies listing garage addresses that differed from the residence addresses").

Defendants are also entitled to summary judgment on Count II. First, plaintiffs have failed to present a prima facie case of discrimination. The Sixth Circuit has stated that

> [t]o establish a prima facie case of discrimination [based on age under the ELCRA], a plaintiff must show that (1) he is a member of a protected class, (2) he was qualified for his job and did it satisfactorily, (3) despite his qualifications and performance, he suffered an adverse employment action, and (4) that he was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside his protected class.

*Cicero v. Borg-Warner Auto., Inc.*, 280 F.3d 579, 583 (6th Cir. 2002). Plaintiffs have failed to show that Mullins did his job satisfactorily (in light of the admitted garaging address misrepresentations) and they have failed to show that he was replaced by or treated less favorably than a similarly situated individual outside his protected class. Plaintiffs' sole allegation of dissimilar treatment – that defendants' agent "purposely and mainly [hung] out with younger agents" at company gatherings – is too vague to show the required "less favorable treatment" required by the fourth prong of *Cicero*.

Second, Mullins does not qualify as an "employee" of defendants. As another judge of this Court has explained,

> [a] prerequisite to maintaining an action under . . . Elliott Larsen is that a plaintiff be an 'employee' of the defendant. In cases where the dispute centers on determining whether a plaintiff is either an employee or an independent contractor, the Court must apply the "economic realities test." Under the test, the court will examine the economic realities underlying the relationship between the individual and the so called principal . . .
>
>> . . . [u]nder the economic realities test, courts consider several factors, such as the parties view of their relationship, the hiring and termination methods employed by the alleged employer, whether the alleged employer withholds taxes or pays social security obligations, the extent the worker receives benefits, the opportunities for the workers' advancement, the degree of control by the principal over the worker, the permanency of the relationship, and the respective furnishing of facilities and equipment by either party.
>
> Whether an individual is an employee or an independent contractor is a question of law.

*Savas v. William Beaumont Hosp.*, 216 F. Supp. 2d 660, 664 (E.D. Mich. 2002) (internal quotation marks and citations omitted). In the present case, plaintiffs allege that defendants required Worldwide to be open from 9 a.m. to 5 p.m. and that defendants' agent made in-person visits to Worldwide in order to review paperwork that Mullins prepared pursuant to the parties' contract. These allegations are insufficient to establish the employer-employee relationship necessary for plaintiffs to bring a claim under the ELCRA, particularly in light of the provision of the agency agreement stating that Worldwide, and Mullins as its agent, is "an independent contractor." Defs.' Ex. A (Agency Agreement) at 2.

Even assuming that plaintiffs have stated a prima facie case of age discrimination,

8

and assuming further that Mullins was defendants' employee, the claim nonetheless fails because plaintiffs have produced no evidence to suggest that defendants' stated reason for terminating the contract was pretextual. The Sixth Circuit has stated that

> [a] plaintiff can establish that a defendant's reasons for termination are pretext (1) by showing the reasons had no basis in fact, (2) if they have a basis in fact, by showing that they were not the actual factors motivating the decision, or (3) if they were factors, by showing that they were jointly insufficient to justify the decision.

*Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 654 (6th Cir. 2012) (internal quotation marks omitted). In the present case, no reasonable jury could find that defendants did not terminate the parties' contract for the reason defendants stated, i.e., that plaintiffs materially misrepresented customer information by inserting a false garaging address on three insurance applications. Plaintiffs have admitted that they committed this fraud, and they have offered no argument as to why jurors might legitimately doubt that this was the actual reason why defendants terminated their contract with plaintiffs. Accordingly,

IT IS ORDERED that defendants' motion for summary judgment is granted.

Dated: September 8, 2021
      Detroit, Michigan

s/Bernard A. Friedman
BERNARD A. FRIEDMAN
SENIOR UNITED STATES DISTRICT JUDGE